I HEREBY CERTIFY THAT THIS
DOCUMENT WAS SERVED BY FIRST
CLASS MAIL, POSTAGE PREPAID, TO
(SEE BELOW) AT THEIR RESPECTIVE
MOST RECENT ADDRESS OF RECORD IN
THIS ACTION ON THIS DATE

TO:         DATE:     DEPUTY CLERK:

Petitioner on 6-11-15 by TS



FILED
CLERK, U.S. DISTRICT COURT

June 11, 2015

CENTRAL DISTRICT OF CALIFORNIA
BY:_____TS_____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

CHARLES WILLIAMS,                      )   Case No. CV 13-5498-DFM
                                       )
                  Petitioner,          )
                                       )   OPINION AND ORDER
            v.                         )
                                       )
RANDY GROUNDS, Warden,                 )
                                       )
                  Respondent.          )
                                       )
                                       )
_____)

# I.

# BACKGROUND

**A.    Procedural History**

**1.    Petitioner's Conviction and Sentence**

On December 12, 2011, a jury convicted Petitioner Charles Williams of 12 counts of robbery, also finding that Petitioner personally used a firearm while committing the offenses. Respondent's Notice of Lodging, Lodged Document ("LD") 1, 2. The trial court sentenced Petitioner to 26 years in state prison. LD 1, 3.

///

///

**2.      The Federal Petition**

On July 30, 2013, Petitioner filed a Petition for Writ of Habeas Corpus in this Court. Dkt. 1 ("Petition"). On December 18, 2013, Respondent moved to dismiss the Petition on the basis that Petitioner had not exhausted his state-court remedies with respect to three claims. Dkt. 17. After Petitioner failed to file an opposition to Respondent's motion, this Court directed Petitioner to either (a) file a stay-and-abeyance claim if he believed he could make the necessary showing for such relief, (b) file an amended petition that deleted the unexhausted claims, or (c) show cause in writing why the petition should not be dismissed without prejudice for failure to exhaust state-court remedies. Dkt. 25 at 5.

Petitioner elected to file an amended petition that deleted his unexhausted claims. On June 30, 2014, Petitioner filed a first amended petition. Dkt. 28 ("FAP"). The FAP raises the following claims for relief: (1) Petitioner's rights to due process and equal protection were violated by the absence of any African-American jurors; (2) at the preliminary hearing, the witnesses were all sitting together in the courtroom when the judge took the bench; (3) the trial judge allowed the jurors to work on crossword puzzles and read during breaks in testimony; (4) juror bias; (5) the evidence was insufficient to support Petitioner's robbery convictions; (6) Petitioner's Sixth Amendment right to confrontation was violated; (7) Petitioner's trial counsel and appellate counsel provided ineffective assistance; (8) Petitioner is actually innocent of the charged crimes; and (9) Petitioner's conviction and sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment. FAP at 5, 10-35.

**3.      Petitioner's Direct Appeal and State Habeas Proceedings**

On direct appeal, Petitioner's counsel submitted a brief pursuant to People v. Wende, 25 Cal.3d 436 (1979), in which counsel indicated that there

2

were no arguable issues to raise on appeal and requested that the court conduct an independent review of the record. LD 4. Petitioner also submitted his own supplemental brief that raised four of the issues raised here. LD 5. The California Court of Appeal affirmed the judgment in a reasoned decision that reached the merits of all four claims raised by Petitioner. LD 6.

On April 26, 2013, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court in which he raised the claims raised in the FAP. LD 7. The California Supreme Court denied the petition with citations to People v. Duvall, 9 Cal.4th 464, 474 (1995); In re Waltreus, 62 Cal.2d 218, 225 (1965); In re Dixon, 41 Cal.2d 756, 759 (1953); In re Swain, 34 Cal. 2d 300, 304 (1949); and In re Lindley, 29 Cal.2d 709, 723 (1947). LD 8.

**B.   Summary of the Evidence Presented at Trial**

The underlying facts are taken from the unpublished opinion of the California Court of Appeal.[1] Unless rebutted by clear and convincing evidence, these facts are presumed correct. Tilcock v. Budge, 538 F.3d 1138, 1141 (9th Cir. 2008); 28 U.S.C. § 2254 (e)(1). Because Petitioner has raised a claim of insufficient evidence, the Court has independently reviewed the record. Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).

1.   The Prosecution Case

On December 26, 2010, Francisco Merino was working as a cashier at Shawn's Market. Three African–American men, one of whom was armed with a gun, entered the store. The gunman, Petitioner, pointed the weapon at Merino and told him not to move. As Petitioner held Merino at bay, one of Petitioner's companions took over $1,000 from the register, cigarettes, and

---

[1] In all quoted sections of the Report and Recommendation, the term "Defendant" has been replaced with "Petitioner."

3

liquor. Merino's coworker saw what was occurring and approached the register. Petitioner's other accomplice pulled a gun and chased the coworker into a bathroom on the premises.

On January 9, 2011, Ana Ornales Madallana and Reina Ramos were working as cashiers at Virgil Farm Market. Two men approached the cash registers and one of them jumped over the counter and yelled at the women to open their respective registers. He removed cash from each of the registers. The second man, Petitioner, stood in front of the counter and pointed a gun at the victims.

On January 12, 2011, Sushanta Halder and his wife were working at Tripti Market. Three African–American men entered the store. Petitioner produced a gun and told Halder and his wife not to move. The other two men came behind the counter and took money and cigarettes.

On January 12, 2011, Segeun Park was the cashier at Virgil Square Market. Petitioner pointed a gun at Park and told him not to move. Two African–American males got on the counter and took money and cigarettes.

On January 15, 2011, Yadin Taracena was working at Advance America, a payday loan company. Also present were her manager, Ingris Martinez, and a customer, Karla Henriquez. Three African–American men entered the store. The men began asking about applying for a loan. One of the three, Petitioner, pulled a gun and told everyone not to move. The other two men jumped over the counter and took money. The men also took Henriquez's purse and wallet.

On January 28, 2011, Oscar Blanco was working as a

cashier at Neida's 99 Cent Store. A customer, Jose Lopez, was near the counter. Two African–American men entered the store. One of the men, Petitioner, approached the counter, pulled out a gun, and told Blanco that this was a robbery and demanded all of the money. Blanco handed Petitioner money from the register. The second man took Blanco's and Lopez's wallets.

All of the robberies were recorded on security cameras and the videos were played for the jury.

LD 6 at 2-3.

## II.

## STANDARD OF REVIEW

Petitioner's state habeas petition in which he presented the claims in his federal Petition was denied by the California Supreme Court on procedural grounds. See LD 8. Where there is no state-court decision on the merits of a federal claim, this Court reviews the claim de novo. Cone v. Bell, 556 U.S. 449, 472 (2009); see also Answer at 14 (conceding that review is de novo). Under de novo review, Petitioner bears the burden of demonstrating that he is "in custody in violation of the Constitution or laws or treaties of the United States." Johnson v. Zerbst, 304 U.S. 458, 468-69 (1938); see also 28 U.S.C. §§ 2241(c)(3), 2254(a).

## III.

## DISCUSSION

**A.   Unconstitutional Jury Composition**

Petitioner, who is African-American, argues that his constitutional rights were violated because there were no African-Americans on his jury panel. Petitioner alleges that, compared to the demographic make-up of Los Angeles County, the fact that there were no African-American jurors must mean that African-American jurors were purposefully and systematically excluded from

5

the juror pool. FAP at 9-10.

Under the Sixth Amendment, a criminal defendant has a right to be tried by a jury drawn from a representative cross section of the community. Taylor v. Louisiana, 419 U.S. 522, 528 (1975). However, there is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." Id. at 538 ("Defendants are not entitled to a jury of any particular composition"). To prevail on a fair cross-section claim, the defendant must show: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Duren v. Missouri, 439 U.S. 357, 364 (1979); Randolph v. California, 380 F.3d 1133, 1140 (9th Cir. 2004) (citation omitted). If the petitioner makes a prima facie showing under Duren, the burden shifts to the state to justify the infringement by demonstrating that attainment of a fair cross-section is incompatible with a significant state interest. Duren, 439 U.S. at 368.

Petitioner has arguably met the first prong of Duren because African-Americans are a distinctive group for purposes of a fair cross-section claim. See Randolph, 380 F.3d at 1140. Petitioner, however, has not satisfied the second prong of Duren, which "requires proof, typically statistical data, that the jury pool does not adequately represent the distinctive group in relation to the number of such persons in the community." Thomas v. Borg, 159 F.3d 1147, 1150 (9th Cir. 1998) (internal quotation marks and citation omitted). While there are several tests for measuring the degree of underrepresentation and no particular method is constitutionally mandated, see Berghuis v. Smith, 559 U.S. 314, 329-30 (2010), Petitioner provides no data for applying any test. The

FAP provides no information about the number of African-Americans in Los Angeles County venires or in Los Angeles County. The only evidence before the Court is Petitioner's observation that the only African-American on his jury was an alternate juror. That is insufficient. See Thomas, 159 F.3d at 1150 (holding that petitioner's observations that there were no black jurors on the panel from which his jury was chosen did not satisfy second Duren prong, because his panel represented only a small portion of venires). "[A] violation of the fair cross-section requirement cannot be premised upon proof of underrepresentation in a single jury." United States v. Miller, 771 F.2d 1219, 1228 (9th Cir. 1985).

Petitioner, therefore, has not met his burden under the second Duren prong of providing statistical data necessary for the Court to determine the underrepresentation, if any, of African-Americans in Los Angeles County venires. He has also failed to meet his burden under the third Duren prong of showing that the Los Angeles County jury selection process somehow systematically excluded African-Americans. See Duren, 439 U.S. at 364. Even if Petitioner had shown underrepresentation, he could not prevail without a showing that the underrepresentation was due to the system Los Angeles County used in 2008 to assemble jury venires. See Randolph, 380 F.3d at 1141-42. No such evidence is before the Court.

Accordingly, Petitioner's fair cross-section claim does not warrant federal habeas relief.

**B.   Suggestive Identification at Preliminary Hearing**

Petitioner contends that his federal constitutional rights were violated because he was the only defendant in the courtroom during the preliminary hearing and the witnesses were sitting together before defense counsel made a motion to exclude them. FAP at 11. The record shows that Petitioner's trial counsel made and the trial court granted a motion to exclude witnesses at the

outset of the preliminary hearing. Clerk's Transcript ("CT") 1C. Each witness then testified in turn. CT 2-80. Nevertheless, Petitioner contends, "the damage had already been done." FAP at 11. It appears to the Court that Petitioner's contends that the witnesses' identification was tainted by the fact that the witnesses saw that he was the defendant and thus knew to identify him as the robber.

Evidence derived from a pretrial identification procedure may violate due process only where the challenged procedure created "a very substantial likelihood of irreparable misidentification." Perry v. New Hampshire, --- U.S. ---, 132 S. Ct. 716, 720 (2012) (citation and internal quotation mark omitted); see also Simmons v. United States, 390 U.S. 377, 384 (1968). Courts employ a two-part analysis to evaluate whether an in-court identification has been irreparably tainted by an impermissibly suggestive pretrial identification procedure. See United States v. Love, 746 F.2d 477, 478 (9th Cir. 1984); Green v. Loggins, 614 F.2d 219, 223 (9th Cir. 1980). The first step is to determine whether the pretrial identification was unduly suggestive. Simmons, 390 U.S. at 384; Green, 614 F.2d at 223. This may occur when a photographic identification procedure "emphasize[s] the focus upon a single individual," thereby increasing the likelihood of misidentification. United States v. Bagley, 772 F.2d 482, 493 (9th Cir. 1985). Whether an identification procedure was unduly suggestive is a fact-specific determination, which may involve consideration of the size of the array, the manner of its presentation by the officers, and the details of the photographs themselves. See id.

If the identification procedure was unduly suggestive, the second step requires a determination of whether the totality of the circumstances surrounding the eyewitness's identification indicates that the identification was nonetheless reliable. Neil v. Biggers, 409 U.S. 188, 199 (1972); Simmons, 390 U.S. at 383; see also Love, 746 F.2d at 478. Factors considered in assessing

reliability include: (1) the opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the prior description; (4) the witness's level of certainty at the confrontation; and (5) the length of time between the crime and the identification. Biggers, 409 U.S. at 199-200; Manson v. Brathwaite, 432 U.S. 98, 114 (1977). Where "the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth." Perry, 132 S. Ct. at 720.

Here, even if the Court assumes that it was unduly suggestive to allow the eyewitnesses to see Petitioner being brought into the courtroom before they were excluded at the preliminary hearing, the totality of the circumstances amply demonstrates that the eyewitnesses' identification was nonetheless reliable. All but one of the ten eyewitnesses who identified Petitioner as one of the robbers during the preliminary hearing had identified Petitioner from a photospread that they were shown shortly after the robberies. See CT at 2-10, 11-14, 17-24, 36-39, 43-48, 52-57, 60-64, 68-72, 75-79. It is thus not the case that these eyewitnesses were somehow misled into thinking Petitioner must be the robber because he was brought into the courtroom. Under these circumstances, the indicia of reliability overwhelm any marginal suggestiveness caused by the fact that the witnesses were present when Petitioner came into the courtroom as the only defendant.

Therefore, Petitioner's claim that his constitutional rights were violated by this identification procedure does not warrant federal habeas relief.

## C. **Crossword Puzzle**

Petitioner argues that his federal constitutional rights were violated because the trial judge allowed the jurors to read or work on crossword puzzles when the attorneys were engaged in sidebar discussions. FAP at 11. This claim

is meritless. The Court told the jurors that during jury selection "it's fine to bring in something to read. You can bring in a crossword puzzle. But you cannot be sneaking a peak while we are in session but it's fine to have something to pull out when we go to sidebar or take a break." 2 Reporter's Transcript ("RT") 309. Nothing about this instruction was improper. There is no constitutional requirement that, as Petitioner argues, "the jurors' attention should be focused on the case during the entire duration of the trial," FAP at 11, such that it would be a deprivation of Petitioner's constitutional rights for a trial court to allow jurors to read a newspaper during a break or work on a crossword puzzle during a lengthy sidebar colloquy. What is required is that the jurors pay attention to the evidence when the court is in session, which is exactly what the trial court's instruction required. Petitioner is not entitled to federal habeas relief on this basis.

**D.    Juror Misconduct**

Petitioner makes two allegations of juror misconduct. First, Petitioner alleges that he was prejudiced by Juror No. 3's failure to disclose during voir dire that he had once been the victim of an assault. FAP at 11-12. Second, Petitioner contends that Alternate Juror No. 7099 lied when he stated that he did not know Merino and his co-worker Ricardo Saloj, the victims of the Shawn's Market robbery in counts one and two. Id. at 12-13.

**1.    Legal Standard**

To succeed in alleging juror bias, Petitioner would have had to "demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." Smith v. Swarthout, 742 F.3d 885, 892 (9th Cir. 2014) (quoting McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984)). "The Supreme Court has held that an honest yet mistaken answer to a voir dire question rarely amounts to a constitutional

violation; even an intentionally dishonest answer is not fatal, so long as the falsehood does not bespeak a lack of impartiality." Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir. 1998) (citing McDonough Power Equip., 464 U.S. at 555–56). "Whether a juror is dishonest is a question of fact." Fields v. Brown, 503 F.3d 755, 767 (9th Cir. 2007) (en banc) (citation omitted). The assessment of juror bias is "essentially one of credibility, and therefore largely one of demeanor." Patton v. Yount, 467 U.S. 1025, 1038 (1984). "[T]he trial court's resolution of such questions is entitled . . . to 'special deference.' " Id. (citing Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 500 (1984)).

## 2.    Juror No. 3

Immediately following the conclusion of voir dire, and before the prosecution's opening statement, Juror No. 3 asked to speak with the trial court. Outside the presence of the jury, Juror No. 3 stated:

> There's just something I wanted to mention, to be completely honest. When I was questioned previously about having been victimized, there was one incident that took place about four or five years ago that I had forgotten to mention in which a stranger had walked up and socked me in the face for no apparent reason. And [a] couple days after that … I was treated for actually a torn retina and the treatment was completely successful. This incident will have no effect on me being impartial in this case, but just to be honest, I felt I should have mentioned it at that time.

2 RT 905. In response to Juror No. 3's disclosure, the trial court stated, "That's great. And we appreciate that." When the trial court asked counsel if they had any questions for Juror No. 3, they both stated that they did not have any questions. Id. Juror No. 3 remained on the jury. Id.

Petitioner has not demonstrated that Juror No. 3 was biased. The mere fact that Juror No. 3 did not immediately disclose the assault does not

11

demonstrate dishonesty or bias, particularly given that the juror disclosed the assault directly after voir dire and before opening statements. Furthermore, Juror No. 3 stated that the assault would not have any effect on his ability to be a fair and impartial juror. The trial court and attorneys had the opportunity to personally assess Juror No. 3's demeanor and credibility. Nothing in the record suggests that the trial court's conclusion that Juror No. 3 could be fair and impartial was unreasonable. See, e.g., United States v. Quintero-Barraza, 78 F.3d 1344, 1350 (9th Cir. 1995) ("The [Supreme] Court has . . . mandated that we give 'special deference' to the trial court's decision on juror bias.").

### 3.   Alternate Juror No. 7099

During a break in Merino's testimony, Alternate Juror No. 7099 asked to speak with the trial court. 2 RT 939. Outside the presence of the jury, he informed the court that he was a regular patron of Shawn's Market, the store allegedly robbed in counts one and two. He further stated that he had frequented the market approximately two to three times per month for ten years but noted that he only shops there "before 3 o'clock in the daytime," 2 RT 939-40, whereas the robbery occurred at 8:00 p.m. He denied ever having seen Merino before trial. 2 RT 940. He also stated that the only insight that his familiarity with the market gave him was that the robbers probably did not use a car because "the parking is terrible." 2 RT 940-41.

The trial court then conferred with counsel outside of Alternate Juror No. 7099's presence. 2 RT 941-42. Counsel indicated that they had no objection to him remaining on the jury. The trial court then admonished the juror that "if anything at all comes up that gives you any kind of special knowledge about this case, will you please tell us immediately," to which he replied, "Sure." 2 RT 942.

Petitioner's contention that Alternate Juror No. 7099 lied when he stated that he did not know the victims of the Shawn's Market robbery is speculative

and unsupported by any facts or citation to the record. Petitioner's conclusory allegations that a juror might have committed misconduct are insufficient to warrant habeas relief. See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995); see also Blackledge v. Allison, 431 U.S. 63, 75 n. 7 (1977) (noting that "the petition is expected to state facts that point to a real possibility of constitutional error" (citation and internal quotation marks omitted)). Furthermore, the trial court's determination that Alternate Juror No. 7099 was credible when he stated that he did not know the victims and could be fair and impartial was reasonable and entitled to deference. See Patton, 467 U.S. at 1038.

Accordingly, Petitioner is not entitled to habeas relief with respect to his claims of juror misconduct.

**E.   Sufficiency of the Evidence**

Petitioner contends that the evidence at trial was insufficient to sustain any of his robbery convictions. FAP at 13-15, 35. The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970); accord Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). It is well established that sufficient evidence exists to support a conviction if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Viewing the evidence in the light most favorable to the prosecution, there was ample evidence from which a rational trier of fact could have determined that Petitioner was guilty of the charged robberies:

Counts One and Two. Merino identified Petitioner as the robber; this testimony was corroborated by video surveillance footage. 2 RT 926, 935-36,

945-49, 951-52. Petitioner argues that Merino's testimony is insufficient because he testified at the preliminary hearing that he was not 100% certain that the person he identified from the photographic lineup was Petitioner. 2 RT 951; CT 25. However, the jury obviously determined that Merino was credible in positively identifying Petitioner at trial, despite his concession at the preliminary hearing that he was not completely certain of his identification, a determination which this Court must give deference to on federal habeas review. If confronted by a record that supports conflicting inferences, federal habeas courts "must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326.

Counts Three and Four. Ornelas and Ramos identified Petitioner as the robber. 2 RT 959-60, 1244-45, 1246-48. Petitioner contends that the evidence was insufficient because Ornelas was unable to identify him from a photographic lineup, and because Ramos's pretrial identification was tainted by the fact that his picture was the only photograph in which the subject was looking upward. FAP at 18, 26. However, the jury found Ornelas's and Ramos's identifications of Petitioner to be credible, despite these alleged inconsistencies, a determination to which this Court owes deference.

Counts Five and Six. Mujumdar and Halder identified Petitioner as the robber. 2 RT 1206, 1209-10, 1211-14, 1232-33, 1236-37.

Count Seven. Park positively identified Petitioner from a photographic lineup and at trial as the gunman. 3RT 1514-15, 1517-19. This identification was corroborated by the store's video surveillance footage. 3 RT 1519-22.

Counts Eight, Nine, and Ten. Both Martinez and Taracena identified Petitioner at trial as the gunman. 3RT 1533-34, 1551-52. Both also testified that Petitioner had altered his appearance since the robbery by wearing glasses and growing a beard. 3 RT 1534, 1547. Taracena also identified Petitioner's

14

photograph from a crime alert bulletin that was issued shortly after the Advance America robbery. 3 RT 1533-34. In addition, Taracena testified that she witnessed one of Petitioner's accomplices taking Henriquez's purse and wallet during the robbery. 3 RT 1543-44. Petitioner argues that the evidence was insufficient because neither Martinez nor Taracena was able to identify him in a pretrial photographic lineup. FAP at 17. Again, however, this argument goes to the weight of their in-court identifications, a determination which the jury decided against Petitioner. Therefore, he has not shown that the evidence was insufficient to sustain the Advance America robbery convictions.

Counts Eleven and Twelve. Blanco identified Petitioner as the gunman in a photographic lineup and at trial. 2 RT 1255, 1257-58, 1261-62. Lopez also identified Petitioner both in a pretrial photographic lineup and at trial. 3RT 1504-06, 1509. Petitioner contends that the evidence was insufficient to sustain his conviction for robbing Lopez because Lopez testified at the preliminary hearing that Petitioner had pointed the gun at him and told him to hand over his money, but testified at trial that it was Petitioner's accomplice who told him to hand over his money. FAP at 24. However, the jury was aware of this alleged inconsistency in Lopez's testimony, yet still found Lopez to be a credible witness, a finding which this Court cannot second guess on habeas review.

In sum, viewing the evidence in the light most favorable to the prosecution, there was ample evidence from which a rational trier of fact could have determined that Petitioner was guilty of all of the charged robberies.

**F.     Confrontation Clause**

Petitioner contends that he was deprived of his Sixth Amendment right to confrontation because two of the victims of counts two and ten, Saljo and Henriquez, did not testify at trial. FAP 15, 22-23. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused

shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This "bedrock procedural guarantee" is applicable in both federal and state prosecutions. <u>Crawford v. Washington</u>, 541 U.S. 36, 42 (2004). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." <u>Maryland v. Craig</u>, 497 U.S. 836, 845 (1990). The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross examination. <u>Crawford</u>, 541 U.S. at 59.

Petitioner's Sixth Amendment right to confrontation was not violated here because the prosecution did not seek to introduce at trial any statements made by either Saloj or Henriquez. Rather, the prosecution used the testimony of Merino to establish the robbery charge in count two and the testimony of Martinez and Taracena to establish the robbery charge in count ten. Moreover, Merino, Martinez, and Taracena were all cross-examined by the defense. Accordingly, Petitioner's Sixth Amendment right to confrontation was not violated, and he is therefore not entitled to federal habeas relief.

## G.  Ineffective Assistance of Counsel

Petitioner alleges that trial counsel provided ineffective assistance by failing to: (1) question and request the dismissal of Juror No. 3; (2) inform the jury that the victim in count one was uncertain of his identification of Petitioner; (3) challenge the lack of African-American jurors; (4) request dismissal of counts two and ten on the basis that the victims in those robberies did not testify at trial; and (5) impeach the victim of count seven with his contradictory preliminary hearing testimony. In addition, Petitioner contends that appellate counsel was ineffective for filing a <u>Wende</u> brief on appeal and not raising any other issues. FAP at 29-33.

16

### 1.    Legal Standard

A petitioner claiming ineffective assistance of counsel must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). "Deficient performance" means unreasonable representation falling below professional norms prevailing at the time of trial. Id. at 688–89. To show deficient performance, the petitioner must overcome a "strong presumption" that his lawyer "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 689–90. Further, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The initial court considering the claim must then "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

To meet his burden of showing the distinctive kind of "prejudice" required by Strickland, the petitioner must affirmatively "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Harrington v. Richter, --- U.S. ---, 131 S. Ct. 770,  791 (2011) ("In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently."). A court deciding an ineffective assistance claim need not address both components of the inquiry if the petitioner makes an insufficient showing on one. Strickland, 466 U.S. at 697.

///

**2.   Analysis**

    a.   Failure to Move for the Dismissal of Juror No. 3

Petitioner argues that counsel was ineffective for failing to question or move for the dismissal of Juror No. 3 after he had informed the court that he had previously been the victim of an assault. FAP at 29. As discussed in detail above, Petitioner has not shown that Juror No. 3 had any actual or implicit bias against Petitioner. The trial court accepted Juror No. 3's explanation for why he did not disclose the assault during voir dire and did not dismiss Juror No. 3 as a result of his revelation. Accordingly, even if trial counsel had made a motion to dismiss Juror No. 3, any such motion would likely have failed. See James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) (concluding that counsel's failure to take a futile action does not constitute ineffective assistance of counsel); see also Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985).

    b.   Failure to Inform the Jury that the Victim in Count One
         Was Uncertain of His Identification of Petitioner

Petitioner contends that trial counsel was ineffective for failing to tell the jury that Merino, the victim in count 1, in addition to identifying Petitioner's picture in a six-pack photographic lineup, had also identified another person as the suspect in a separate six-pack photo array. FAP at 29-31.

During the preliminary hearing, Merino testified that he had been shown two separate six-pack lineups and had identified Petitioner as the gunman in one set and another suspect in the other. CT 25. When cross-examined by defense counsel, Merino admitted that he was not 100% certain of his identification of Petitioner as the gunman. Id. During cross-examination at trial, defense counsel questioned Merino about his identification of Petitioner and he again stated that he was not completely certain of his identification. 2RT 951.

///

18

Petitioner contends that counsel should have specifically informed the jury that there were two separate six-pack photographic lineups, and that Merino picked another person's photograph as well as identifying Petitioner. Petitioner has not demonstrated that counsel provided ineffective assistance by failing to raise the fact that Merino viewed two photographic lineups. Trial counsel established that Merino was not completely certain of his identification of Petitioner. Even if trial counsel was deficient for failing to raise the issue, Petitioner cannot show that he was prejudiced because the evidence of Petitioner's guilt was extremely weighty despite Merino's equivocation: Merino testified at trial that he was certain that Petitioner was the gunman; the jury viewed the video surveillance footage of the robbery; and the modus operandi of the robbery of Shawn's Market was consistent with that of the other robberies. Therefore, Petitioner cannot show a reasonable probability that the outcome would have been different had trial counsel informed the jury that Merino had identified another suspect in a second photographic lineup.

          c.      Failure to Challenge the Absence of African-Americans on the Jury

Petitioner contends that trial counsel was ineffective for failing to make a motion regarding the lack of African-American venire members. FAP at 31. However, as discussed in detail above, Petitioner has not made any factual showing of unconstitutional jury composition in that African-Americans were purposefully and systematically excluded from the jury pool. Therefore, counsel was not ineffective for failing to make a futile motion challenging the racial composition of Petitioner's jury. See James, 24 F.3d at 27; Boag, 769 F.2d at 1344.

          d.      Failure to Move for the Dismissal of Counts Two and Ten

Petitioner alleges that trial counsel was ineffective for failing to move to dismiss counts two and ten on the basis that two of the victims of the robberies,

Saloj and Henriquez, did not testify at trial. FAP at 31-32. Because, as discussed in detail above, there was sufficient evidence to sustain the robbery convictions in counts two and ten without the victims' testimony, any such motion counsel might have made would likely have been futile, and counsel was therefore not ineffective for failing to make such a futile motion. See James, 24 F.3d at 27; Boag, 769 F.2d at 1344.

> e.      Failure to Impeach Park

Petitioner argues that defense counsel provided ineffective assistance by failing to impeach Park, the victim of the robbery in count seven, with his allegedly inconsistent preliminary hearing testimony. FAP at 32.

Park testified at the preliminary hearing that he did not actually witness the robbers take cash and cigarettes from the market. CT 65. Rather, he left the market's counter after the robbers accosted him and later noticed, after the robbers left, that cash and cigarettes were missing. CT 61, 66. At trial, Park testified that the robbers "attempted to take merchandise." In addition, when asked whether the robbers took any merchandise, he responded, "Cigarettes and cash." 3RT 1513.

Park's testimony at the preliminary hearing and his testimony at trial are not in fact inconsistent. Unlike at the preliminary hearing, Park was never asked at trial whether he had personally witnessed the cash and cigarettes being stolen. Moreover, even if the Court assumes that Park gave inconsistent testimony and that trial counsel was deficient for failing to impeach Park with these alleged inconsistent statements, Petitioner cannot demonstrate that he was prejudiced by any such deficiency. Park testified consistently at both the preliminary hearing and at trial that Petitioner was the gunman. Whether Park actually witnessed the robbers taking money and cigarettes or only later discovered that these items were missing has little bearing on his positive identification of Petitioner as the gunman. Therefore, even if trial counsel had

cross-examined Park about his alleged inconsistent statements, Petitioner would nevertheless have still likely been found guilty of the robbery in count seven.

### f.    Ineffective Assistance of Appellate Counsel

Petitioner contends that appellate counsel was ineffective for filing a Wende brief instead of raising any specific instances of error. FAP at 33. Ineffective assistance by an appellate lawyer is measured by the Strickland criteria. Turner v. Calderon, 281 F.3d 851, 872 (9th Cir. 2002). An appellate attorney is not required to raise "every colorable" or "nonfrivolous issue" on appeal. Jones v. Barnes, 463 U.S. 745, 750, 753–54,  (1983). Rather, the "weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989). As a result, a petitioner alleging ineffective assistance of appellate counsel must make a showing that a particular nonfrivolous issue warranted a merits brief. Smith v. Robbins, 528 U.S. 259, 288 (2000).

Because the Court has concluded that none of the claims that Petitioner contends should have been raised on appeal has any merit, appellate counsel was not ineffective for failing to raise these claims on appeal. See Robbins, 528 U.S. at 285–86 (for petitioner to prevail on claim that appellate counsel was ineffective for filing a Wende brief, he would have to show that counsel unreasonably failed to discover nonfrivolous issue and that there is a reasonable probability that petitioner would have prevailed on appeal if counsel did); Pollard v. White, 119 F.3d 1430, 1437 (9th Cir. 1997) (appellate counsel not deficient for failing to present claims with no chance of success).

In sum, Petitioner is not entitled to federal habeas relief with respect to any of his claims of ineffective assistance of trial or appellate counsel.

///

///

**H.   Actual Innocence**

Petitioner argues that he is actually innocent of the robberies because "[t]he prosecution did not prove their case in all alleged counts of robbery." FAP at 35-36. As the Court understands Petitioner's argument, this is a reiteration of his contention that the evidence was insufficient to support his robbery convictions, a contention which the Court has already rejected. As the standard for actual innocence is even higher, see Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997) ("We conclude that . . . the threshold for a freestanding claim of innocence . . . contemplates a stronger showing than insufficiency of the evidence to convict."), it follows from the Court's rejection of Petitioner's insufficiency of the evidence claims that Petitioner is not entitled to habeas relief on his claim that he is actually innocent.

**I.   Eighth Amendment**

Petitioner argues that his sentence amounts to cruel and unusual punishment because his conviction was based upon the errors he identified in his petition, i.e., juror misconduct, insufficient evidence, violation of the Confrontation Clause, and ineffective assistance of counsel. FAP at 35-36.

A criminal sentence that is grossly disproportionate to the crime for which the defendant was convicted violates the Eighth Amendment's prohibition against cruel and unusual punishment. Solem v. Helm, 463 U.S. 277, 288 (1983). However, Petitioner does not appear to be arguing that his sentence of 26 years is disproportionate to the 12 counts of robbery of which he was convicted. Rather, Petitioner rehashes his previous claims of constitutional error in the guise of an Eighth Amendment claim. As discussed above, Petitioner has not demonstrated any constitutional error with regard to any of his claims, and therefore his Eighth Amendment claim is similarly infirm.

///

///

22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.**

**CONCLUSION**

For the reasons discussed in detail above, the Petition is denied and the action is dismissed with prejudice.

Dated:  June 11, 2015

_____

DOUGLAS F. McCORMICK
United States Magistrate Judge